UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DR. N. DEAN PASHA,

                              Petitioner,                    14 CV 799 (RPP)

                - against -                  **OPINION & ORDER**

JOHN M. JANSHESKI and STARBOARD
INTERNATIONAL, L.L.C.,

                              Respondents.
-------------------------------------------------------------------X
**ROBERT P. PATTERSON, JR., U.S.D.J.**

      On February 7, 2014, Petitioner Dr. N. Dean Pasha brought this action seeking to vacate

parts of an Arbitration Award issued on November 11, 2013, only as to the Arbitrator's

determinations on Pasha's counterclaims.  (Pet. to Vacate Arbitration ("Pet."), ECF No. 2; Mem.

of Law in Supp. re: Pet. ("Pet'r's Mem."), ECF No. 5; Decl. of Michael R. Newman ("Newman

Decl."), ECF No. 4.)  Respondents John M. Jansheski and Starboard International, L.L.C.

("Respondents") filed a memorandum in opposition to Pasha's petition on March 10, 2014.

(Resp'ts' Mem. in Opp'n to Pet'r's Pet. ("Opp'n Mem."), ECF No. 18.)  Pasha filed a reply in

further support of his petition on March 17, 2014 (Reply in Supp. of Pet. to Vacate ("Reply

Mem."), ECF No. 23), and oral argument was held before this Court on April 11, 2014.  (Tr. of

Proceedings on April 11, 2014 ("Tr.").)  For the reasons that follow, Pasha's petition is

DENIED.

    **I.**      **Background**

      The parties' dispute arose from a joint venture agreement between Pasha and Jansheski.

(See Newman Decl. Ex. 1, Final Award ("Award") at 2.)  Jansheski, who was the majority

shareholder of a company called DenTek Oral Care, Inc. ("DenTek"), sought to have Pasha help

1

him distribute DenTek's oral care products in the United Kingdom and other foreign markets. (Id.)  The parties entered into a distribution arrangement, which evolved into a Joint Venture Agreement, dated May 26, 2005.[1]  (Id.)  Pursuant to Section 12.6(f) of the Joint Venture Agreement, Jansheski had the unilateral right, after two years of operation of the joint venture, to buy out Pasha's interest in the joint venture upon Jansheski's sale of DenTek to a third party. (Id.)

In 2010, TSG Consumer Partners, L.L.C. ("TSG") offered to buy Jansheski's interest in DenTek for $110 million.  (Id. at 3, 33.)  Jansheski and Pasha negotiated and eventually agreed that Jansheski would purchase Pasha's 50% interest in the joint venture for $8 million.[2]  (Id. at 3-4.)  They also agreed that Jansheski would transfer to Pasha 24.5% of the membership interest in a new replacement joint venture to distribute DenTek products, which was to be formed after the sale of Jansheski's capital stock in DenTek to TSG had closed.  (Id. at 3-4, 31.)  Jansheski agreed to initiate arbitration if the closing did not result in a new joint venture within 180 days of the close of the sale to TSG.[3]  (Id. at 31.)

---

[1] The 2005 joint venture was originally made between DenTek and Pasha's company, Passion 4 Health International Ltd. ("Passion 4 Health"), but at some point Jansheski and Pasha took assignments of the shares to the joint venture in their own names.  (Award at 2.)  Pasha and Jansheski each owned 50% interest in the joint venture.  (See id. at 16.)

[2] According to the factual findings of the Arbitrator, Jansheski first offered Pasha $3 million for his interest in the joint venture, and Pasha declined the offer.  (Id. at 3.)  As the deadline neared for the closing of the TSG transaction, Jansheski increased his offer to $4 million.  (Id.)  Pasha again refused.  (Id.)  Jansheski then "placed the Article 12.6(f) figure of $6 million on the table."  (Id.)  Pasha "finally agreed to $8 million and a 24.5% interest in the new joint venture that was to replace the company."  (Id. at 3-4.)  The Arbitrator found that, at the time of the negotiations between Pasha and Jansheski, Jansheski "was under pressure."  (Id. at 16.)  Jansheski's meeting with TSG was "scheduled for November 4, 2010," and "the exclusivity agreement with TSG was set to expire November 5th or 7th."  (Id.)  The Arbitrator found that Jansheski "agreed to Pasha's price of $8 million because he was 'going to get the deal closed pretty much any way that [he] could.'"  (Id. at 17.)

[3] The $8 million purchase of Pasha's 50% interest in the 2005 joint venture and the transferring of 24.5% of the shares in a new joint venture were memorialized in two separate agreements (the "Purchase Agreement" and the "Transfer Agreement"), both dated November 5, 2010.  (Pet'r's Mem. at 4; Award at 4 n.3.)

Jansheski paid Pasha the agreed-upon $8 million when the TSG transaction closed, in December 2010.  (Pet'r's Mem. at 4.)  However, Jansheski and DenTek did not agree on a replacement joint venture within 180 days after the closing of the TSG transaction, and Jansheski did not submit any dispute to arbitration.  (Award at 37.)  As a result, no replacement joint venture was formed, and Jansheski never transferred 24.5% of a new joint venture to Pasha.  (Id.)

On August 17, 2012, Jansheski initiated arbitration against Pasha, arguing, among other claims, that Pasha fraudulently inflated the gross sales of the joint venture and was unjustly enriched by the buyout.  (Pet'r's Mem. at 4; Opp'n Mem. at 3.)  In response, Pasha asserted a counter-claim against Jansheski and Starboard, seeking damages and an order that Jansheski deliver membership interest representing 24.5% of a new joint venture.  (Pet'r's Mem. at 5; Award at 8.)  An arbitration hearing commenced on May 15, 2013 before the Honorable Stephen G. Crane (Ret.) (the "Arbitrator"), and an arbitration award (the "Award") was issued on November 11, 2013.  (Id. at 8, 43.)

In the Award, the Arbitrator denied all of Jansheski's claims, finding, among other things, that Jansheski agreed to the $8 million figure without relying on the financial figures that Pasha allegedly falsified and that there was no evidence that Pasha had breached the implied covenant of good faith and fair dealing.  (Id. at 17-29.)  The Arbitrator also dismissed Pasha's counterclaims.  The Arbitrator agreed with Pasha that "the 2010 Purchase Agreement and the 2010 Transfer Agreement are part of unified contract" that would not be set aside for lack of consideration.  (Id. at 35-36.)  He also agreed with Pasha that the 2010 Transfer Agreement was not executed under duress.  (Id. at 36.)  However, the Arbitrator found that Pasha's counterclaims for damages were without merit because "Pasha presented absolutely no evidence or testimony of damages at the hearing" and therefore, "failed to establish, by a preponderance of

the evidence, the existence or amount of damages suffered as a result of the Claimant's failure to abide by the 2010 Transfer Agreement." (Id. at 38.)  In support of this determination, the Arbitrator noted that only one witness testified on Pasha's behalf—Pasha himself—and that Pasha "treats damages in such a cavalier fashion that he does not make any arguments addressed to damages at all in his briefs." (Id. at 9, 38 n.12.)

The Arbitrator also denied Pasha's claim that he was entitled to specific performance of the 2010 Transfer Agreement.  The Arbitrator noted that a party seeking specific performance must prove that "the balance of equities tips in favor of the party seeking performance." (Id. at 39.)  In this case, the Arbitrator found that, although Pasha's conduct "did not rise to the level of a breach of fiduciary duty, it nevertheless was inequitable and cannot be rewarded with equitable relief." (Id. at 40.)  The Arbitrator supported his determination with the following factual findings:

> Pasha and the Claimant were not only business partners, but were close friends as well. Pasha knew that the TSG offer was something the Claimant had dreamed of and worked toward his entire career.  Although the testimony of the parties conflicted, the Claimant's testimony that the parties began negotiating for the purchase of Pasha's shares of the joint venture in June or July has the greatest ring of truth to it.  Pasha's testimony that the transaction was sprung on him in late October is simply not credible.  Thus, there is little doubt that the parties negotiated the Claimant's purchase of Pasha's shares in the joint venture for more than just a few days or weeks as Pasha testified.  The discussions likely started several months before the transaction occurred.  Pasha never would commit to a number, dragging the negotiations on and, in the process, driving up the price for his shares. . . . Pasha was [] motivated to obtain the best deal for himself, and was acutely aware of the Claimant's need to purchase his 50% share of the joint venture in order to close the TSG deal.  Pasha used the pressure placed on the Claimant by TSG to his greatest advantage.  Although his conduct did not rise to the level of a breach of fiduciary duty, it nevertheless was inequitable and cannot be rewarded with equitable relief.

(Id. at 39-40.)

Pasha now petitions the Court to vacate and/or remand the Arbitrator's Final Award, pursuant to 9 U.S.C. § 10 of the Federal Arbitration Act ("FAA").

## II.     Legal Standard

Section 10 of the FAA provides a narrow set of circumstances under which the Court may vacate or correct an arbitration award.  See 9 U.S.C. § 10(a).  The Court may vacate the award on one of four grounds: (1) where the award was procured by fraud; (2) where the arbitrator was not impartial; (3) where the arbitrator was "guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy"; and (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  Id.  The Second Circuit also recognizes an additional ground for vacating an arbitration award where the arbitrator exhibited a manifest disregard for the law.  Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 208-09 (2d Cir. 2002).

Courts may vacate arbitration awards "only in very unusual circumstances."  Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064, 2068 (2013) (internal citation omitted).  A party seeking relief under Section 10 of the FAA "bears a heavy burden," and "an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits."  Id. (quoting Eastern Assoc. Coal Corp. v. Mine Workers, 531 U.S. 57, 62 (2000)). "[O]nly the most egregious errors or instances of extreme misconduct cited in the statute that would materially prejudice the rights of a party warrant vacating an arbitral award," Fairchild Corp. v. Alcoa, Inc., 510 F. Supp. 2d 280, 286 (S.D.N.Y. 2007),  and even "manifest disregard of evidence" is "not a proper ground justifying vacating an arbitrator's award."  Id.; see also Data & Development, Inc. v. Infokall, Inc., 513 F. App'x 117, 118 (2d Cir. 2013) ("[A]n arbitration award may not be vacated because of disagreement with the arbitrator's evaluation of the evidence.").

### III.   Discussion

In support of his motion to vacate parts of the Arbitrator's Award, Pasha argues that the Arbitrator violated Sections 10(a)(3) and 10(a)(4) of the FAA in four different ways:  (1) the Arbitrator refused to hear pertinent evidence as to damages and therefore erred when he failed to award damages; (2) the Arbitrator manifestly disregarded the law by failing to award specific performance in the alternative to damages; (3) the Arbitrator acted outside the scope of his authority by issuing an award based on his "own notions of economic justice"; and (4) the Arbitrator left certain issues unresolved and therefore failed to issue a "mutual, final, and definite award."  (Pet'r's Mem. at 9-30.)  For the reasons discussed below, Pasha has not met his "heavy burden" to show that the Arbitrator's Award should be vacated or remanded here.  See Oxford Health Plans, 133 S. Ct. at 2068.

### A.   *There is no evidence that the Arbitrator refused to hear pertinent evidence as to damages*

First, Pasha argues that the Arbitrator disregarded pertinent evidence about the damages owed to Pasha.  (Pet'r's Mem. at 9.)  Pasha asserts that the Arbitrator found that Pasha and Jansheski had entered into a valid contract under which Jansheski was obligated to transfer a 24.5% interest in a new replacement joint venture to Pasha.  (Id.)  Because no 24.5% interest was transferred, Pasha argues that it was "nonsensical" for the Arbitrator to conclude "that Jansheski's failure to provide the promised shares did not result in damage to Pasha."  (Id. at 10.)  Pasha cites exhibits and testimony from the hearing which he describes as "ample evidence" as to the monetary value of the joint venture.[4]  (Id. at 11-19.)

---

[4] Pasha does not address the fact that the new joint venture that was to be formed after the TSG transaction—and from which Jansheski had agreed to transfer Pasha a 24.5% membership interest—was never formed.  Instead, Pasha argues that "the joint venture was an ongoing joint venture," and therefore, the replacement joint venture was "the exact same joint venture that Dr. Pasha sold 50% of his interest for $8 million . . . it's the same joint venture at all times."  (Tr. at 8, 10.)  This claim is inconsistent with the Arbitrator's factual findings that Jansheski had agreed to

Pasha's argument fails, however, because there is no evidence that the Arbitrator refused to hear the evidence Pasha describes.  Rather, the Award reflects that the Arbitrator heard all of the evidence that was presented at the hearing before concluding that Pasha had "failed to establish, by a preponderance of the evidence, the existence or amount of damages suffered as a result of [Jansheski's] failure to abide by the 2010 Transfer Agreement."  (Award at 38.)  The Arbitrator's factual finding that "Pasha presented absolutely no evidence or testimony of damages at the hearing" (id.) is not subject to judicial challenge.  Westerbeke Corp., 304 F.3d at 214 (An arbitrator's factual findings "are not subject to judicial challenge"); see also Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004) ("A motion to vacate filed in federal court is not an occasion for de novo review of an arbitral award.").

Here, Pasha has not shown that the Arbitrator was "guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy," and therefore, the Arbitrator's award cannot be vacated under Section 10(a)(3) of the FAA.  See 9 U.S.C. § 10(a)(3).  The Arbitrator's determination that Pasha did not prove the value of a 24.5% interest in a new joint venture is not subject to this Court's review.

### B.  The Arbitrator did not "manifestly disregard" basic contract law

Pasha also argues that the Arbitrator "manifestly disregarded basic contract law" regarding damages and specific performance.  (Pet'r's Mem. at 26-27.)  He asserts, without citing any case law, that damages are self-evident when a party fails to perform a contract and that, therefore, the Arbitrator was obligated to award damages after finding that Jansheski did not

---

transfer to Pasha a 24.5% interest in a "new joint venture that was to replace the company" (Award at 3-4), and the 2010 Transfer Agreement which referred to "an amended or replacement joint venture agreement."  (Newman Decl. Ex. 4, Nov. 5, 2010 Transfer Agreement.)  Additionally, Pasha ignores the fact that the evidence Pasha cites about the value of the 2005 joint venture was presented by witnesses for Jansheski, and not by Pasha's own witnesses. (Award at 8-9; Tr. at 30.)

perform his contractual promises.[5]  (Id.)  He also argues that Delaware law permits a negotiating party to be aggressive in pursuing his own interests (id. at 29), and the Arbitrator disregarded the law when he determined that Pasha's conduct was "inequitable and cannot be rewarded with specific performance."  (Award at 40.)

Proving that an arbitrator acted in manifest disregard of the law requires a two-part showing.  Yahoo! Inc. v. Microsoft Corp., No. 13-CV-7237 (RPP), 2013 WL 5708604, at *4 (S.D.N.Y. Oct. 21, 2013).  First, the court must consider "whether the governing law alleged to have been ignored by the arbitrator was well-defined, explicit, and clearly applicable." Westerbeke Corp., 304 F.3d at 209.  Second, the court must consider "whether the arbitrator appreciate[d] the existence of a clearly governing legal principle but decide[d] to ignore or pay no attention to it."  Id.  Vacating an award based on an arbitrator's manifest disregard of the law requires a finding of "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law."  Id. (citing Saxis S.S. Co. v. Multifacs Int'l Traders, Inc., 375 F.2d 577, 582 (2d Cir. 1967).  Awards are vacated on this ground "only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent."  T. Co. Metals, L.L.C. v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 340 (2d Cir. 2010).

In this case, the Arbitrator explicitly cited Delaware law and applied it throughout the Award.  First, the Arbitrator cited Gibbons v. Whalen, 2010 WL 8250809, at *2 (Del. Super. 2010), for the principle that a party seeking to establish a claim for breach of contract "must establish the existence of the contract, the breach of an obligation imposed by the contract, *and resulting damages*." (Award at 37-38 (emphasis added).)  The Arbitrator applied this governing

---

[5] Pasha bases this claim on the argument that the value of the new joint venture is the same as the value of the old joint venture—an argument that the Arbitrator did not accept and which the 2010 Transfer Agreement disaffirms. (See sources cited supra note 4.)

legal principle when he concluded that damages could not be awarded because Pasha had not met his burden to prove the existence or amount of damages.  (Id. at 38.)

The Arbitrator also cited and applied the governing legal principles regarding specific performance under Delaware law.  Citing Osborn ex rel. Osborn v. Kemp, 991 A.2d 1153, 1158 (Del. 2010), and Corkscrew Min. Ventures, Ltd. v. Preferred Real Estate Investments, Inc., 2011 WL 704470, at *6 (Del. Ch. 2011), the Arbitrator noted that "a party seeking specific performance must show by clear and convincing evidence that a valid contract exists, the party is ready, willing, and able to perform, and the balance of equities tips in favor of the party seeking performance."  (Award at 39.)  The Arbitrator than applied this governing law when he analyzed the facts regarding Pasha's behavior—he concluded that Pasha had "used the pressure placed on [Jansheski] by TSG to his greatest advantage" and that, based on these and other facts, Pasha's conduct was "inequitable and cannot be rewarded with equitable relief."  (Id. at 40.)  The Arbitrator was permitted "to weigh and credit the evidence in the light of the record as a whole in determining the Award," Fairchild Corp., 510 F. Supp. 2d at 288, and there is no showing that the Arbitrator appreciated and ignored any "well-defined, explicit, and clearly applicable law." Westerbeke Corp., 304 F.3d at 209.  Therefore, Pasha has not met his burden to establish manifest disregard of the law.

### C.  There is no evidence that the Arbitrator acted outside the scope of his authority

Pasha also argues that a court is free to vacate or overturn an arbitration award when an arbitrator acts outside of the scope of contractually delegated authority and issues an award that "simply reflect[s] [his] own notions of [economic] justice," Oxford Health, 133 S. Ct. at 2068, and that the Arbitrator imposed his own notions of economic justice in this case.  (Pet'r's Mem. at 21.)  There is no merit to Pasha's claim.  Upon review of the Arbitrator's Award, it is clear

that the Arbitrator found sufficient evidentiary grounds for his decision in this case and that the Award "draws its essence from the contract."  See Oxford Health, 133 S. Ct. at 2068 (emphasizing that "an arbitral decision even arguably construing or applying the contract must stand" and that a reviewing court is not to inquire whether an arbitrator got the contract's "meaning right or wrong") (internal citations and quotation marks omitted).

### D.  The Arbitrator issued a final and definite award

Finally, Pasha argues that the Arbitrator's Award does not finally resolve all issues because "[t]he issue of the breach of the Transfer Agreement was not fully determined since the Final Award ultimately leaves open the issue of Jansheski's failure to transfer the shares to Pasha."  (Pet'r's Mem. at 22.)  He argues that the Arbitrator "did not determine the issue so that no further litigation is necessary to finalize the obligations of the parties," (id. at 24), and that the Award is not "a mutual, final, and definite award," as required by Section 10(a)(4) of the FAA. 9 U.S.C. § 10(a)(4).

There is simply no merit to Pasha's contention.  An award does not need to dispose of "*every* outstanding issue that might arise in later litigation between the parties" to be final—it "requires resolution only of all issues *submitted to arbitration*."  Rocket Jewelry Box Inc. v. Noble Gift Packaging, Inc., 157 F.3d 174, 177 (2d Cir. 1998) (emphasis in original) (internal citation and quotation marks omitted).  In this case, the Arbitrator addressed all of the issues that were submitted to arbitration in his Award and explicitly declared "that Pasha is not entitled to enforcement of the 2010 Transfer Agreement."[6]  (Award at 41.)  There is no merit to Pasha's argument that the Award is incomplete.

---

[6] In addition to the reasons cited by the Arbitrator for denying Pasha specific performance of the 2010 Transfer Agreement, the Transfer Agreement could not be enforced because Jansheski and DenTek "failed to agree upon a new replacement joint venture agreement" and the new joint venture was never formed.  (Award at 37.)

**IV.      Conclusion**

For the reasons stated above, it is hereby ORDERED that the petition of Dr. N. Dean

Pasha to vacate or remand the arbitration award at issue in this action is DENIED.  The Clerk of

Court is directed to close this case.

IT IS SO ORDERED.

Dated: New York, NY
April 25, 2014


                                                     __/s/_____
                                                     Robert P. Patterson, Jr.
                                                     U.S.D.J.


Copies of this Opinion and Order were sent to:

*Counsel for Petitioner:*

**Jeffery J. Daar**
Daar & Newman, A Professional Law Corporation
21700 Oxnard Street, Suite 350
Woodland Hills, CA 91367
818 615-0999
Fax: 818 615-1066
Email: jdaar@daarnewman.com

**Michael Rodney Newman**
Daar & Newman, A Professional Law Corporation
21700 Oxnard Street, Suite 350
Woodland Hills, CA 91367
818 615-0999
Fax: 818 615-1066
Email: mnewman@daarnewman.com

**Gary Steven Redish**
Winne, Banta, Hetherington, Basralian & Kahn, P.C.
Court Plaza South - East Wing, 21 Main Street
Suite 101
P.O. Box 647
Hackensack, NJ 07601
(201)-487-3800
Fax: (201)-487-8529
Email: gredish@winnebanta.com

*Counsel for Respondents:*

**Philip James Layfield**
Roetzel & Andress, LPA
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401
310-956-1497
Fax: 800-644-9861
Email: philip@pjllawfirm.com

**Donald R. Dinan**
Roetzel & Andress, LPA. (D.C.)
600 14th Street, NW Suite 400
Washington, DC 20005
(202)-625-0600
Fax: (202)-338-6340
Email: ddinan@ralaw.com